# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| LEE ECKHART,<br>    Plaintiff, | )<br>)<br>) |
| v. | )   CAUSE NO.: 2:17-CV-253-JEM<br>) |
| NANCY A. BERRYHILL,<br>Deputy Commissioner for Operations,<br>Social Security Administration,<br>    Defendant. | )<br>)<br>)<br>)<br>) |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Lee Eckhart on June 6, 2017, and Plaintiff's Brief in Support of His Motion to Reverse the Decision of the Commissioner of Social Security [DE 15], filed by Plaintiff on October 27, 2017. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for benefits or further proceedings. On December 7, 2017, the Commissioner filed a response, and on December 20, 2017, Plaintiff filed a reply.

### I.     Procedural Background

On January 14, 2014, Plaintiff filed an application for benefits alleging that he became disabled on November 1, 2010. Plaintiff's application was denied initially and upon reconsideration. On June 17, 2016, Administrative Law Judge ("ALJ") William E. Sampson held a video hearing at which Plaintiff, with an attorney representative, and a vocational expert testified. On July 7, 2016, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1.     The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since November 1, 2010, the alleged onset date.

3. The claimant has the following severe impairments: degenerative disc disease of lumbar spine and cervical spine, bi-polar disorder, anxiety, an adjustment disorder and drug and alcohol abuse.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with exceptions. Specifically, the claimant is able to lift up to 20 pounds occasionally and up to 10 pounds frequently, stand and/or walk up to 6 hours in an 8-hour workday and sit up to 6 hours in an 8-hour workday. He is never to climb ladders, ropes, or scaffolds, but is occasionally able to climb ramps and stairs and balance, stoop, kneel, crouch and crawl. Mentally, he is limited to simple, routine and repetitive tasks. He is able to have occasional interaction with his co-workers and supervisors and is to have no interaction with the public.

6. The claimant is unable to perform any past relevant work.

7. The claimant was 31 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. The claimant has a marginal education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 1, 2010, through the date of the decision.

The Appeals Council denied Plaintiff's request for review and denied his request to reopen the decision, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II.  Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial

evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review*." Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## III. Analysis

Plaintiff argues that the ALJ failed to properly evaluate his limits in concentration, persistence, and pace, that the physical limitations prescribed in the RFC were not adequately supported by medical evidence, and that the ALJ erroneously discredited Plaintiff based on his

work and treatment history. The Commissioner maintains that the ALJ properly evaluated Plaintiff's physical limitations and that his conclusions were based on substantial evidence.

### A. Plaintiff's Residential Functional Capacity

The RFC is an assessment of what work-related activities the claimant can perform despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see also* 20 C.F.R. §§ 404.1545(a)(1); 416.1545(a)(1). In evaluating a claimant's RFC, an ALJ is expected to take into consideration all of the relevant evidence, including both medical and non-medical evidence. *See* 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3). Although an ALJ is not required to discuss every piece of evidence, he must consider all of the evidence that is relevant to the disability determination and provide enough analysis in his decision to permit meaningful judicial review. *Clifford*, 227 F.3d at 870; *Young,* 362 F.3d at 1002. In assessing a claimant's RFC, the ALJ must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence. SSR 96-8, 1996 WL 374184 (July 2, 1996) at *7. The discussion must establish a logical bridge between the evidence and the conclusion. *See O'Connor-Spinner*, 627 F.3d at 618; *Briscoe*, 425 F.3d at 352 (remanding where the ALJ "did not explain how he arrived at these [RFC] conclusions; this omission in itself is sufficient to warrant reversal of the ALJ's decision").

Further, when an ALJ relies on testimony from a vocational expert ("VE") to make a disability determination at step four or five, the ALJ must incorporate all of the claimant's limitations supported by medical evidence in the record. *See Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *see also Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004) ("a hypothetical question to the vocational expert must include all limitations supported by medical

5

evidence in the record"); *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003) ("Furthermore, to the extent the ALJ relies on testimony from a vocational expert, the question posed to the expert must incorporate all relevant limitations from which the claimant suffers.") (citation omitted). If the VE is unaware of all of the Plaintiff's limitations, he may refer to jobs the Plaintiff cannot perform. *Kasarsky*, 335 F.3d at 543.

Plaintiff argues that the ALJ failed to properly evaluate his limitations in concentration, persistence, and pace. At step three, the ALJ found that Plaintiff had "moderate limitations in his ability to maintain concentration, persistence, or pace." However, the ALJ did not include those restrictions in the RFC, merely limiting Plaintiff to "simple, routine, and repetitive tasks." Nor did the ALJ include Plaintiff's limitations in concentration, persistence or pace in his hypotheticals to the VE. The Seventh Circuit has repeatedly held that limiting a claimant to simple, routine or repetitive tasks is not sufficient to account for his difficulties in concentration, persistence, or pace. *See Jelinek v. Astrue*, 662 F.3d 805, 813-14 (7th Cir. 2011) (concluding that limitations to sedentary and light unskilled work did not "address[] the impact of the mental limitations . . . which . . . limited [the plaintiff]'s ability to maintain regular work attendance, to carry out instructions, and to deal with the stresses of full-time employment"); *Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009) (rejecting the contention "that the ALJ accounted for [the plaintiff]'s limitations of concentration, persistence, and pace by restricting the inquiry to simple, routine tasks that do not require constant interactions with coworkers or the general public"); *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008) (finding that a limitation to unskilled work did not account for limitations in concentration, pace, and mood swings); *Young v. Barnhart*, 362 F.3d 995, 1004 (7th Cir. 2004) (concluding that a limitation of "simple, routine, repetitive, low

6

stress work with limited contact with coworkers and limited contact with the public" was inadequate to take into account the claimant's limitations).

Although the Commissioner points to reports of State agency psychologists stating that Plaintiff could "understand, remember and carry out simple unskilled tasks," "attend to such tasks to complete the tasks" and "manage the stresses involved with unskilled work," those comments appear to address only the difficulty of the tasks themselves, rather than the ability of Plaintiff to perform them with the consistency, persistence and pace demanded in a work environment. The ALJ himself did not address this distinction, leaving the reviewer without a "logical bridge" between the evidence and the ALJ's conclusions. *See O'Connor-Spinner*, 627 F.3d at 618.

Plaintiff also argues that the ALJ failed to provide a basis for the physical limitations in the RFC. Specifically, the ALJ found that Plaintiff could perform light work, lift up to 20 pounds occasionally and up to 10 pounds frequently, stand and/or walk up to 6 hours in an 8-hour workday, sit up to 6 hours in an 8-hour workday, and occasionally climb ramps and stairs and balance, stoop, kneel, crouch and crawl. Plaintiff argues that the ALJ did not solicit any medical opinions of Plaintiff's physical limitations, and that the ALJ crafted the limitations himself.

The ALJ stated that Plaintiff suffered from degenerative disc disease in his back, COPD, and neck pain and stiffness and pain in his arms, among other ailments. He concluded that "although the claimant's impairments are severe, they do not preclude him from completing basic work related activities." The ALJ effectively substituted his own judgment for that of medical professionals, in violation of the Seventh Circuit Court of Appeals' repeated warning that ALJs are not to make their own independent medical findings and should not "succumb to

the temptation to play doctor" because "lay intuitions about medical phenomena are often wrong." *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) (citing cases); *see also, e.g., Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009) (warning that an ALJ may not "play[] doctor and reach[] his own independent medical conclusion"); *Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996).

The Commissioner states that no physician opined on Plaintiff's physical limitations because Plaintiff did not raise the issues of neck and back pain until the administrative hearing. The ALJ opined: "no treating or examining physician has found the claimant to be disabled or even limited to an extent greater than that outlined in his RFC." But it is the ALJ's burden to support his RFC findings with the opinions of medical professionals. *See Barnett*, 381 F.3d at 669 ("An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable.") (citations omitted). The Commissioner points to evidence in the record suggesting that stricter limitations would not have been appropriate, such as a Function Report in which Plaintiff stated that he could lift 50 pounds. But the ALJ still does not explain how he eventually concluded that Plaintiff could lift 20 pounds "occasionally" and 10 pounds "frequently," leaving the reviewer without a "logical bridge" between the evidence and the ALJ's conclusions. *See O'Connor-Spinner*, 627 F.3d at 618. The presence of unclear or contradictory evidence in the medical record only underscores the importance of enlisting medical expertise to determine what Plaintiff can and cannot do. *See Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) ("ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves.").

B. <u>Plaintiff's Work and Treatment History</u>

Plaintiff argues the ALJ improperly discredited his testimony about his inability to work because he tried to work after the alleged disability onset date. As the Seventh Circuit has noted, "even persons who *are* disabled sometimes cope with their impairments and continue working long after they might have been entitled to benefits." *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012); *see also Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014) ("[A] claimant's dogged efforts to work beyond her physical capacity would seem to be highly relevant in deciding her credibility and determining whether she is trying to obtain government benefits by exaggerating her pain symptoms."); *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005) ("A person can be totally disabled for purposes of entitlement to social security benefits even if, because of an indulgent employer or circumstances of desperation, he is in fact working.").

In this case, the ALJ found that Plaintiff was working after his disability onset date, "but was having trouble making ends meet." The ALJ concluded that the fact that Plaintiff worked was "evidence that his impairments were not so severe to warrant mental and physical limitations that are more severe." The ALJ failed to explain why he arrived at that inference, rather than another, equally plausible one: that Plaintiff attempted to work at a job that he may not have been suited for because he was "having trouble making ends meet."

Plaintiff also argues that the ALJ erred in inferences he made about Plaintiff's treatment history. The ALJ found that Plaintiff sought only "sparse, routine and conservative" treatment, and "has not required any surgery, nor has he had any extended hospital stays or emergency room visits . . . and has never had any injections even though MRIs showed degenerative disc disease . . . ." But the ALJ cites no evidence, medical or otherwise, that any of this treatment

would have been appropriate. The ALJ also disbelieved Plaintiff's report of his own symptoms in part because he failed to go to physical therapy as instructed. When assessing non-compliance with treatment as a factor in considering a claimant's statements regarding her symptoms, the ALJ must analyze whether the non-compliance with treatment is justified and develop the record accordingly. *See* SSR 16-3p, 2016 WL 1119029, at *7 (March 16, 2016); *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference. . . . The claimant's 'good reasons' may include an inability to afford treatment, ineffectiveness of further treatment, or intolerable side effects."); *Craft*, 539 F.3d at 679 ("[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care.").

In this case, the record indicates two reasons why Plaintiff may not have been able to seek medical treatment: that he has been incarcerated on multiple occasions, and that he "was having trouble making ends meet." At the hearing, Plaintiff specifically testified that he was not able "to start the treatments that I'm supposed to start" because he was incarcerated. Despite eliciting that testimony, the ALJ did not consider it in his decision, nor did he explain why he did not believe it. Instead, the ALJ concluded that Plaintiff's "failure to follow his treating physicians' instructions by going to physical therapy . . . is evidence that he is able to perform light exertional work [with the limitations described in the RFC]." That inference is not supported by the record. Although the Commissioner states that "the record does not indicate

that [Plaintiff] sought physical therapy at any other time," it is the ALJ's job to "explore" that explanation before making a negative inference. *Craft*, 539 F.3d at 679.

On remand, the ALJ is instructed to draw a logical bridge from the evidence as it actually appears in the record to his conclusions about Plaintiff's RFC. Specifically, the ALJ must analyze Plaintiff's difficulties in concentration, persistence, and pace beyond simply prescribing unskilled work, and incorporate those difficulties in any hypothetical posed to the VE. The ALJ is reminded that any limitations in the RFC must be supported by medical opinion evidence, and that he must articulate the basis for any limitation that he finds.

The ALJ is reminded that any inferences drawn against Plaintiff based on his work or treatment history must be fully supported by the record, and of the need to obtain additional information as needed. *See, e.g., Barnett*, 381 F.3d at 669 ("An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable.") (citing 20 C.F.R. § 404.1527(c)(3); SSR 96-2p, 1996 WL 374188 at *4 (July 2, 1996)); 20 C.F.R. §§ 404.1512(d)(1), 416.919(b)).

### V. Conclusion

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 13], and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 31st day of August, 2018.

s/ John E. Martin<br>
MAGISTRATE JUDGE JOHN E. MARTIN<br>
UNITED STATES DISTRICT COURT

cc: All counsel of record